

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00071-CR

_____


JUSTIN ALLEN DOKTER, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 30751-B



Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

This is an appeal of the conviction by a jury of Justin Allen Dokter for the aggravated assault of Timothy Driscoll, which occurred during a fight in a bar. Dokter claims that he was not afforded his right to a speedy trial.

I.     **Description of Brawl**

On May 16, 2003, a dispute developed at a bar between Dokter and Driscoll; the incident appears to have arisen primarily over a question of which person had the right to use the pool table next. After the initial verbal confrontation, Charles Dennis Waldon, the bouncer, ordered both Driscoll and Dokter to leave. Dokter exited the bar briefly as he had been ordered, but Driscoll remained, playing pool. Dokter then returned and the dispute resumed, escalating to violence when Dokter struck Driscoll, knocking him to the floor. Tim Johnson[1] and Jessica Goodwin, the bartender, testified that they believed Driscoll hit his head on the pool table as he fell to the floor. After Driscoll fell, his friend, Matthew Wheeler, joined the fight with Dokter. While Dokter was fighting Wheeler,[2] Patrick Puckett, who was Dokter's friend, entered the fray by hitting Driscoll in

---

[1]Johnson was employed at the same hospital with Driscoll, but did not know him well. Nevertheless, after the initial verbal confrontation, Johnson had told Driscoll that "we were going to kind of get your back if something broke out."

[2]Sheri McCarty, Dokter's girlfriend, testified that the incident became a brawl and estimated that at least three individuals attacked Dokter.

the back of the head with a pool cue.[3]  Driscoll may have been struck again while he was lying on the floor.[4]

Driscoll suffered severe, near-fatal brain injuries sustained during the melee, but received almost immediate medical attention from patrons of the bar.[5]  According to Dr. Tom Chow, one of the doctors who treated Driscoll, it is impossible to isolate which particular event caused Driscoll's brain trauma.  Chow further testified it was unlikely that Driscoll's brain trauma was precipitated solely by Dokter's punch or by a blow to Driscoll's head when he struck the pool table on the way to the floor, but that a fall "down to the ground could have been a significant contribution."  After some waffling concerning whether a blow from a pool cue could have been sufficient to generate the trauma that was suffered, Chow testified that the "most logical and reasonable conclusion" would

---

[3]McCarty testified she did not see Puckett hit anyone, but admitted to telling Puckett that he needed to back Dokter up.

[4]Johnson testified that after Puckett had hit Driscoll with the pool cue, both Dokter and Puckett punched Driscoll while he was lying on the floor.  John Adami testified that Dokter punched Driscoll while Driscoll was on the floor.  According to Adami, he punched Puckett after Puckett struck Driscoll with the pool cue.  Adami testified he joined the fight because of the way Puckett hit Driscoll with the pool cue.  Wheeler testified that after he punched Dokter, Dokter jumped on top of Wheeler and started punching Wheeler.

[5]After the fight had subsided, Driscoll had difficulty breathing and was bleeding in the brain. Wheeler, who was a nurse, immediately began performing CPR on Driscoll with the assistance of another bar patron who was an EMT. Before the assault, Driscoll was employed as a nurse in the intensive care unit.  As part of his employment, Driscoll supervised and trained other nurses. Driscoll suffered permanent vision loss and still suffers from a number of cognitive problems. Although Driscoll is currently employed as a nurse, he was unable to work for several years, is currently working in a different department, and does not supervise and train other nurses.

3

be that all of the events, taken together, caused the brain trauma and that any head injuries which Driscoll received after the initial brain trauma occurred would have aggravated the trauma and its effects.

Although Dokter was indicted for aggravated assault and aggravated assault with a deadly weapon on July 23, 2003, the trial of this case did not begin until almost five years later. The jury was instructed on the law of parties and the State relied upon the law of parties in its closing argument. Dokter's primary argument in defense centered upon the theory that the first punch (applied by Dokter) did not cause Driscoll's brain trauma and that Dokter neither encouraged, directed, nor aided Puckett in the delivery of the other injuries which Driscoll suffered. The jury found Dokter guilty of aggravated assault and assessed his punishment at five years' imprisonment. Dokter's sole issue on appeal is that his right to a speedy trial was violated.

## II.    Speedy Trial Guarantees

An accused's right to a speedy trial is guaranteed by both the Sixth Amendment to the United States Constitution and the Texas Constitution.[6] *Zamorano v. State*, 84 S.W.3d 643, 647 nn.5 & 6 (Tex. Crim. App. 2002); *see Barker v. Wingo*, 407 U.S. 514, 530 (1972). When evaluating a claim of a speedy trial violation, the reviewing court must use a balancing test, weighing the conduct of the State against that of the defendant. *Barker*, 407 U.S. at 530; *Shaw v. State*, 117 S.W.3d 883, 888

---

[6]While the Texas Constitution provides an independent speedy trial guarantee, the Texas Court of Criminal Appeals has traditionally analyzed speedy trial claims using the same analytical framework required under the United States Constitution. *Zamorano*, 84 S.W.3d at 648.

(Tex. Crim. App. 2003). The court must consider, under the totality of the circumstances, the following four factors: (1) the length of the delay, (2) the State's reason for delay, (3) whether the delay was due to lack of diligence on the part of the State, and (4) whether the delay caused harm to the accused. *Shaw*, 117 S.W.3d at 888–89; *see Barker*, 407 U.S. at 530. These four so-called "*Barker* factors" are assigned varying weights by the court according to the individual facts of the case, placed on the appropriate sides of the proverbial scales of justice, and weighed with and against each other to determine if, on balance, the accused's right to a speedy trial has been violated. *See, e.g., Holmes v. State*, 938 S.W.2d 488, 489–91 (Tex. App.—Texarkana 1996, no pet.). The four factors must be considered together; no single factor is necessary to establish a violation or sufficient by itself to establish a violation of the right to a speedy trial. *Barker*, 407 U.S. at 533; *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

Generally, a speedy trial claim will not be considered until a sufficient amount of time has elapsed so as to present a prima facie case that the State's continued delay is unreasonable. *Shaw*, 117 S.W.3d at 889. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. The period of delay "is measured from the time the defendant is arrested or formally accused." *Shaw*, 117 S.W.3d at 889. Once the defendant makes a prima facie showing of unreasonable delay,[7] the

---

[7]The term "presumptively prejudicial," as used in this context of the *Barker* analysis, does not involve a statistical probability of prejudice to the defendant; "it simply marks the point at which courts deem the delay unreasonable enough to trigger the enquiry." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). This "presumptively prejudicial" threshold is a different context from the

reviewing court must consider the length of the delay as one factor among the remaining factors in evaluating the accused's claim. *Id.* at 889. Almost five years passed between Dokter's arrest and the trial. This lapse of time is sufficient to establish a prima facie showing of an unreasonable delay. *See State v. Owens*, 778 S.W.2d 135, 136–38 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd) (seven-month delay established prima facie showing). We now turn to our analysis of the *Barker* factors, mindful that "No one factor possesses 'talismanic qualities.'" *Zamorano*, 84 S.W.3d at 648 (quoting *Barker*, 407 U.S. at 533).

In conducting our review, we defer to the trial court's evaluation of factual issues. *Kelly v. State*, 163 S.W.3d 722, 726–27 (Tex. Crim. App. 2005). Although each individual factor necessarily involves both fact determinations and legal conclusions, the balancing of the factors is purely a legal question which should be reviewed de novo. *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). We overrule the State's argument that error was not preserved for our review.[8]

presumptive prejudice discussion below. *See State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (explaining the different contexts).

[8]We note the State argues Dokter failed to secure a ruling on his motion for new trial. At the hearing on the motion to dismiss, the trial court refused to rule. The trial court stated:

> [I]t's premature to [rule] until we see more about whether these witnesses are out there. And really we need to find out what their memories are like. I'm concerned about a five-year gap, asking someone to remember what took place. I'm not prepared to grant a Motion to Dismiss on Speedy Trial at this particular moment.

Dokter requested a ruling at least three times during the trial. On the first occasion, the trial court stated it would carry the motion with the case. On the second occasion, the trial court ruled the motion was denied, but would be carried for a while. After the State rested, Dokter asked the trial

6

## A. Length of Delay Weighs in Favor of Violation

The first factor to be considered is the length of the delay. *Barker*, 407 U.S. at 530; *Zamorano*, 84 S.W.3d at 648–49. We measure the delay from the defendant's arrest or formal accusation. *Shaw*, 117 S.W.3d at 889; *Blaylock v. State*, 259 S.W.3d 202, 208 (Tex. App.—Texarkana 2008, pet. ref'd). Dokter testified that he was arrested in May 2003 and his trial did not begin until March 10, 2008, a delay of fifty-eight months. A fifty-eight-month delay—almost five years—is unacceptable. The length of delay weighs heavily in favor of finding that there was a violation of the right to a speedy trial.

## B. State's Proffered Reason Weighs in Favor of Finding Violation

Second, we must consider the reason or reasons the State provided in an attempt to justify the delay. *Barker*, 407 U.S. at 531; *Zamorano*, 84 S.W.3d at 648–50. Sometimes, the government's justifications under this second prong should be given greater or lesser weight, depending on the

---

court to rule on the motion to dismiss, which had been "held under advisement up until this point." The trial court ruled, "It's denied," but stated, "Reserve the right to review it as the trial goes along." The State argues Dokter failed to obtain a ruling. The State has not provided this Court with any authority to support its argument other than Rule 33.1 of the Texas Rules of Appellate Procedure. To preserve error for appeal, a defendant must (1) object, (2) state the grounds with sufficient specificity, and (3) obtain an adverse ruling either expressly or implicitly. TEX. R. APP. P. 33.1; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). This case is distinguishable from cases where the trial court failed to rule, but stated it reserved the right to rule at a later point. *See, e.g.*, *Stone v. State*, Nos. 12-06-00418-CR & 12-06-00419-CR, 2008 Tex. App. LEXIS 6738 (Tex. App.—Tyler Sept. 10, 2008, no pets.) (mem. op., not designated for publication). In this case, the trial court affirmatively ruled on the motion, but merely reserved the right to review sua sponte its ruling. Because the trial court did not revisit the issue, its original definitive ruling still stands. Error was preserved for our review.

relative merit of the reasons which are given. *Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* A "neutral" justification (such as an overcrowded docket or mere negligence) "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* "Finally, a valid reason, such as a missing witness, would serve to justify appropriate delay." *Id.*

The State provided several reasons for the delay. An affidavit signed by the attorney who represented the State for the majority of the period of delay was introduced into evidence by agreement of the parties.[9] The affidavit blamed the delay on the victim's hospitalization, difficulty locating witnesses, plea negotiations, and a busy docket. This affidavit asserted that the victim was undergoing treatment for approximately eighteen months and, after the victim was released from the hospital, the State experienced difficulty in locating witnesses, particularly the bouncer at the bar. After the State had located most of the witnesses it sought, unsuccessful plea negotiations were conducted. The affidavit also asserts that continuances were granted to both the State and the defense and that continuances were granted to Dokter when his attorney relocated his offices to Dallas from Longview.[10]

---

[9]The attorney had recently been elected district attorney in another county, and the parties agreed to the introduction of the affidavit in lieu of testimony.

[10]On cross-examination at the hearing on the motion to dismiss, Dokter admitted his attorney had moved his office to Dallas at some point. Dokter did not testify when this occurred and testified he was not aware of any impact the move had on his case. The affidavit filed by the former district

Nevertheless, even with these explanations, the State's reasons failed to account for at least a year's delay in the intervening period. The former assistant district attorney's affidavit stated that after the victim's unrelated arrest for assault–family violence in 2006, he had "limited or no further dealings with the case." We take judicial notice that the former prosecutor was elected district attorney of another county and began serving in that capacity in January 2007; hence, he would not have had connection with the case from that time forward. In addition, Dokter testified that the defense had announced ready at the last docket call at which the case was called, an event which occurred two or three years before the eventual trial. The docket sheet contains no entries on this case for a period of four and a half years. The docket sheet indicates a continuance was granted on September 12, 2003 until October 20, 2003, but is silent until January 25, 2008, when a hearing was held on Dokter's motion to dismiss for failure to provide a speedy trial. The record does not contain any motions or other documents concerning this case filed by either party from November 2003 until January 2008.[11] Since the affidavit was the only evidence submitted by the State to justify the delay, the State provided no reasons for the delay from sometime in 2006 (when the prosecutor originally assigned to the case left the office to assume other duties) until 2008.

---

attorney likewise fails to specify when the office was moved.

[11]The record contains a letter from Dokter's attorney to another court concerning another case which references a hearing in this case set for January 20, 2006. There is an unsigned notation which provides "Reset Felony Hold to 3/27/06."

We note the State argued it had a busy docket. The State's "unreasonable delay" in a run-of-the-mill[12] criminal case cannot be justified merely by suggesting that the State has a backlog of cases or a shortage of staff. *Ex parte Martin*, 33 S.W.3d 843, 846–47 (Tex. App.—Austin 2000), *pet. dism'd, improvidently granted*, 46 S.W.3d 932 (Tex. Crim. App. 2001). "The government must bear responsibility for failing to provide adequate resources to law-enforcement agencies." *Id.* at 847. Accordingly, we cannot conclude, even after giving almost total deference to the trial court's implied findings of fact, that the State's proffered reasons for the delay justifies the nearly five-year delay. The second *Barker* factor weighs slightly in favor of a finding of a speedy trial violation.

## C. Failure to Assert Speedy Trial Right Weighs Against Finding Violation

The third factor is concerned with the timeliness of a defendant's assertion of his right to a speedy trial. *See Barker*, 407 U.S. at 529, 531–32; *Zamorano*, 84 S.W.3d at 648, 651–52. The United States Supreme Court has explicitly rejected the demand-waiver rule which requires a defendant to demand a speedy trial or the right is waived. *Barker*, 407 U.S. at 529–30. However, the Court also noted that the failure to timely seek a speedy trial makes it difficult for a defendant to prevail. *Id.* at 532.

Dokter did not assert his right to a speedy trial until he filed his motion to dismiss on January 18, 2008. Thus, Dokter did not assert his right to a speedy trial for almost fifty-five months. The Texas Court of Criminal Appeals has noted a defendant's failure to make a timely demand for

---

[12]The State presented no evidence that this case was complex or unusually difficult to prosecute. *Cf. Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992).

a speedy trial indicates strongly that he did not really want one and that he was not prejudiced by not having one. *Dragoo*, 96 S.W.3d at 314. The longer the delay—the more likely it is that a defendant who really wanted a speedy trial would take some action to obtain one. *Id.* A defendant's lack of a timely demand for a speedy trial indicates the defendant did not really want a speedy trial, and the inaction weighs more heavily against a violation the longer the delay becomes. *Id.* Further, the Texas Court of Criminal Appeals has held moving for "a dismissal instead of a speedy trial weakens [a speedy trial] claim because it shows a desire to have no trial instead of a speedy trial." *Zamorano*, 84 S.W.3d at 651 n.40.

We note it is uncontested that the parties were in good-faith negotiations for a plea bargain. The former prosecutor stated in his affidavit that plea negotiations were engaged in with the defense counsel, but did not result in a final resolution. The record, though, is rather vague concerning the plea negotiations and their breakdown. Dokter testified that his fellow defendant, Puckett, told Dokter that Puckett's attorney told Puckett the charges would be dismissed. This double hearsay statement not only has serious reliability concerns, but also fails to establish that an agreement had been reached. Nor does the record establish the period of time such negotiations were pending. The mere fact that plea negotiations were pending during some undefined peroid does not make a significant difference. Almost all cases involve some plea negotiation; that is just a part of the normal trial procedure. If the record contained evidence that a plea agreement had been reached and

11

relied upon by Dokter, such evidence might ameliorate Dokter's inaction to a certain extent.[13] In the absence of such evidence, the record fails to contain any excuse for Dokter's failure to timely assert his right to a speedy trial. The third *Barker* factor weighs heavily against a finding of a speedy trial violation.

### D.    Evidence of Prejudice Is Judicial Determination

The last factor requires this Court to determine whether there is evidence of prejudice to the accused attributable to the State's delay. *Barker*, 407 U.S. at 531–32; *Zamorano*, 84 S.W.3d at 648, 652–54. Once a defendant makes a prima facie showing of prejudice, the State has the burden to establish the accused suffered no serious prejudice. *Munoz*, 991 S.W.2d at 826; *State v. Jones*, 168 S.W.3d 339, 349 (Tex. App.—Dallas 2005, pet. ref'd). "Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S.

---

[13]We have recently found a speedy trial violation in a case concerning Dokter's co-defendant, Puckett, who was charged similarly with Dokter because of the same assault. *Puckett v. State*, cause number 06-08-00085-CR. In *Puckett*, however, the defendant presented evidence of three witnesses who could not be located and introduced evidence of what those witnesses' expected testimony would be. *Id.* In contrast, the record here only establishes the existence of one missing witness and fails to contain evidence of what was expected to have been elicited from that testimony. In *Puckett*, there was evidence that a plea agreement had been reached, but not formalized; Puckett's defense counsel took the stand and testified that the former assistant district attorney who was then in charge of the case had announced in open court that the charges against Puckett would be reduced to a misdemeanor, testimony which was borne out by the record of the court reporter. *Id.* The record in *Puckett* also contained evidence that identified the period of years between the State's in-court statement that "we have a deal" and the subsequent refusal by the successor prosecutor to honor that agreement. *Id.* The evidence that a plea agreement had been reached in *Puckett* and relied upon by Puckett and the quantity of proof as to the evidence which was expected to be provided by missing witnesses were major distinctions between the two cases.

at 532. There are three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* The last interest is the most important "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Dokter testified that he was released from jail on bond approximately six weeks after his arrest.[14] Because Dokter was not in custody for most of the delay, the first protectable interest is of minimal importance. Since there was no evidence presented that Dokter experienced anxiety or concern regarding the looming prosecution, we give no consideration to the second subfactor mentioned above. Therefore, only the last (and most important) interest is of concern in this case.

### E.    Record Contains Minimal Particularized Prejudice

A defendant has the burden to make some showing of "prejudice," although a showing of "actual prejudice" is not required. *Munoz*, 991 S.W.2d at 826. In *Barker*, the United States Supreme Court found that there was insufficient evidence the accused suffered any prejudice as a result of Kentucky's five-year delay in prosecuting him, even though he was incarcerated for ten months during that delay. *Barker*, 407 U.S. at 534. The Court held the minimal prejudice of "living for over four years under a cloud of suspicion and anxiety" and spending ten months in jail was insufficient. *Id*. None of the witnesses were unavailable when the case finally came to trial and the trial transcript indicated only two minor lapses in memory among the witnesses who testified. *Id*. Dokter claims

---

[14]Dokter testified he was arrested for driving while intoxicated in another county while out on bond, but had not served any additional time for this case.

13

that the record in this case contains sufficient evidence of particularized prejudice because he was unable to locate several witnesses and the witnesses who did testify had significant memory problems.

At the hearing on the motion to dismiss, Dokter testified that there were several material witnesses which could not be located. Dokter testified, "A lot of the people that were actually there that night were not local, they were in town working." Dokter and his attorney made a number of attempts to locate those witnesses. When asked on cross-examination to name the witnesses which Dokter could not locate, Dokter testified he did not bring the list he had prepared with him and was unable to provide any names. On redirect, Dokter was more particular, indicating that the defense had been unable to contact Waldon, Adami, and David Melcher.[15] Although the State had provided telephone numbers for Adami and Melcher, the State had not provided addresses, and the defense had not been able to contact either witness. Because two of the three witnesses Dokter identified as missing actually testified at trial, the record only contains evidence of one witness, Melcher, who was unavailable. However, Dokter failed to provide any evidence regarding what he expected Melcher's testimony would have been. To establish particularized prejudice based on an unavailable witness, a defendant must present proof both of the efforts made to locate the witness and that the witness would have benefitted his defense. *See Phipps v. State*, 630 S.W.2d 942, 947 (Tex. Crim. App. [Panel Op.] 1982); *Mabra v. State*, 997 S.W.2d 770, 780 (Tex. App.—Amarillo 1999, pet.

_____

[15]Waldon and Adami testified at trial.

14

ref'd); *Clarke v. State*, 928 S.W.2d 709, 716 (Tex. App.—Fort Worth 1996, pet. ref'd). Dokter failed to establish particularized prejudice at the hearing on his motion to dismiss.

Dokter argues the record of the trial demonstrates that most of the witnesses who did testify suffered from lapses of memory and conflicting versions of the events. The record confirms that Wheeler carried his police statement with him to the stand. A number of the witnesses, in trying to recall specifics of the incident, made reference to the fact that the fight occurred five years ago. The only witnesses not clearly associated with either the victim or Dokter were the bouncer and the bartender. Both of these witnesses admitted to having trouble remembering. Goodwin, the bartender, admitted there were parts of the event which she would not have recalled without referring to the statement she gave to the police at a time closer to the incident. Waldon, the bouncer, testified that he could not remember the precipitating cause of the original dispute between Driscoll and Dokter. When asked if he remembered a rumor about Dokter having struck his girlfriend, Waldon testified he did not remember.

Dokter also argues that several of the witnesses testified differently from statements they had given previously, at a time closer to the time of the bar fight. The record confirms that at least two witnesses' testimony differed from their prior statements to the police. Adami testified at trial that he had struck Puckett after he saw Puckett hit Driscoll with a pool cue and that Puckett tripped over Driscoll and fell to the ground near Driscoll. On cross-examination, Adami admitted that the statement he provided to the police made no mention of a pool cue and that he had previously told

15

police that Puckett fell on top of Driscoll, not beside him. Detective David Cheatum testified that Adami's statement to the police made no reference to a pool cue. Whereas Waldon testified at trial that Dokter did not hit Driscoll while Driscoll was on the floor, Waldon had previously claimed that Dokter hit Driscoll while Driscoll was on the floor.

Overall, however, the trial testimony does not demonstrate that most of the witnesses had significant memory problems. Several of the witnesses denied having any memory problems. Wheeler, despite carrying his statement to the stand with him, testified he remembered the events clearly. Johnson and Thomas McGonijl also testified that they remembered the events clearly.

While there is some evidence of prejudice in this case, the evidence is rather minimal. Witnesses often testify differently than their police statements and the use of prior police statements to refresh memories is not out of the ordinary. The evidence in this case merely creates a suspicion of prejudice, a suspicion which was not developed sufficiently to establish a prima facie case of particularized prejudice.

### F.     Role of Acquiescence in Delay

Even if there is insufficient evidence of particularized prejudice, a sufficiently lengthy delay may create a presumption of prejudice (also sometimes called presumptive prejudice). The United States Supreme Court has recognized that a lengthy delay can be sufficient for prejudice to be presumed. *Doggett*, 505 U.S. at 655. The Court noted:

> [T]hough time can tilt the case against either side . . . one cannot generally be sure
> which of them it has prejudiced more severely. Thus, we generally have to recognize

16

that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, . . . it is part of the mix of relevant facts, and its importance increases with the length of delay.

*Id.* at 655–56. The Texas Court of Criminal Appeals has noted "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Dragoo*, 96 S.W.3d at 315; *see Orand v. State*, 254 S.W.3d 560, 570 (Tex. App.—Fort Worth 2008, pet. ref'd) (finding violation of right to speedy trial based on presumptive prejudice when trial occurred fourteen years after offense). We note that a five-year delay, under the appropriate circumstances, may be sufficient to create a presumption of prejudice.[16]

The primary difference between this case and those cases finding presumptive prejudice lies in the fact that Dokter acquiesced in the delay. In *Doggett*, the trial court found that the accused was unaware of the pending indictment for eight and a half years. *Doggett*, 505 U.S. at 653. The Court emphasized that the delay was not extenuated by the defendant's acquiescence. *Id.* at 656. Presumptive prejudice is "extenuated . . . by the defendant's acquiescence" in the delay. *Dragoo*, 96 S.W.3d at 315 (quoting *Doggett*, 505 U.S. at 658). In *Shaw*, the Texas Court of Criminal Appeals held the "appellant's longtime acquiescence in the delay" extenuated any presumptive prejudice.

---

[16]*See Zamorano*, 84 S.W.3d 647 (four-year delay where defendant repeatedly asserted speedy trial after two and a half years); *Guajardo v. State*, 999 S.W.2d 566, 570 (Tex. App.—Houston [14th Dist.] 1999) (five-year delay created presumption of prejudice, but state rebutted the presumption); *State v. Flores*, 951 S.W.2d 134, 144 (Tex. App.—Corpus Christi 1997, no pet.) (four-year lapse between offense and indictment presumptively prejudicial).

*Shaw*, 117 S.W.3d at 890. Dokter's acquiescence in the delay was longer than Shaw's acquiescence. There is no dispute that Dokter knew of the pending charges and failed to file a request for a speedy trial until approximately fifty-five months after his arrest on those charges. Any presumptive prejudice created by the fifty-eight-month delay was extenuated by Dokter's acquiescence in the delay for almost fifty-five months.[17] As such, we are unable to conclude prejudice should be presumed under the facts of this case. The last *Barker* factor weighs against a finding of a speedy trial violation.

### G.    Weighing of *Barker* Factors Is Judicial Decision

Now that we have assigned the relative weight to each relevant factor, giving deference to the trial court's findings of fact, we must consider the four *Barker* factors in the aggregate, along with any other relevant circumstances as may be known by the reviewing court. *Barker*, 407 U.S. at 533; *Zamorano*, 84 S.W.3d at 648, 654–55. We must balance the respective strengths of those factors against the relative weights of the remaining factors "in light of 'the conduct of both the prosecution and the defendant.'" *Zamorano*, 84 S.W.3d at 648; *see also Barker*, 407 U.S. at 530.

As noted above, the almost five-year length of delay weighs heavily in favor of finding a violation of the right to a speedy trial and the anemic reasons for the delay weigh slightly in favor

---

[17]Other Texas courts have held similarly when faced with both a lengthy delay and a lengthy acquiescence in the delay. *See Dragoo*, 96 S.W.3d at 316 (three-and-a-half-year delay not presumptive prejudice because of defendant's acquiescence); *Pinnock v. State*, 105 S.W.3d 130, 137 (Tex. App.—Corpus Christi 2003, no pet.) (no presumptive prejudice due to fifty-month delay when defendant did not assert right); *Harlan v. State*, 975 S.W.2d 387, 391 (Tex. App.—Tyler 1998, pet. ref'd) (four-year delay not presumptive when defendant failed to timely assert right).

of finding a violation. However, these factors are outweighed by the remaining two factors. Dokter failed to make a timely assertion of his right to a speedy trial. Because the record contains only extremely marginal evidence of particularized prejudice and Dokter's acquiescence in the delay extenuated any presumptive prejudice, the last and most important factor weighs against a finding of a speedy trial violation. The trial court did not err in finding Dokter's right to a speedy trial was violated based on the evidence presented in this case.

## III.    Conclusion

Although there is no good excuse for the almost five-year delay in this run-of-the-mill criminal case, the record here does not demonstrate a violation of Dokter's right to a speedy trial. While the length of the delay and the State's explanations favor a finding that Dokter's right to a speedy trial was violated, Dokter's failure to assert that right and the absence of evidence that the delay occasioned prejudice to his ability to defend cause the record to fail to establish such a speedy trial right violation.

We affirm.


Bailey C. Moseley
Justice

Date Submitted:     January 27, 2009
Date Decided:       February 13, 2009

Publish

19