# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00393-CR

---

**Ricky Bee, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 147TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-19-207102, THE HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Ricky Bee was charged with the felony offense of driving while intoxicated ("DWI") with two or more prior convictions for the same offense. *See* Tex. Penal Code §§ 49.04, .09. On appeal, Bee contends that the trial court violated his right to a speedy trial and should have granted his speedy-trial motion. We will affirm the trial court's judgment of conviction.

## BACKGROUND

In October 2019, a police officer initiated a traffic stop of Bee after observing him commit a traffic violation, and another officer arrived on the scene shortly thereafter. After approaching Bee's car and interacting with Bee, the officers detected an odor of alcohol, observed that his eyes were red and watery, and noticed that he was slurring his speech. Bee agreed to submit to field sobriety testing, and the officers observed him exhibit multiple indicators of

intoxication and arrested him for DWI.  Subsequent testing on Bee's blood revealed that he had a blood-alcohol level of .138.

A few days after his arrest, the trial court appointed an attorney to represent Bee. In December 2019, Bee was indicted for felony DWI with two or more prior convictions for the same offense.  Three months later, Bee was released on a personal bond, but the State filed a motion to revoke his bond in August 2020, alleging that he failed to comply with a condition of his release. After an arrest warrant was issued, Bee was arrested in September 2020.

In November and December 2020, Bee filed pro se requests asking the trial court to remove his appointed counsel.  Later in December 2020, the trial court appointed a different attorney to represent Bee.  In February 2021, the trial court appointed a third attorney to represent Bee.  The following month, Bee was again released on personal bond.  In December 2021, the trial court appointed a new attorney to represent Bee.

After Bee failed to appear for a jury docket call in April 2022, a capias was issued. This was the seventh jury trial setting between January and April 2022 with the previous six being reset by the trial court.  Bee was arrested again in August 2022, which was four months after the capias issued.

In October 2022, approximately three years after his initial arrest, Bee and his attorney appeared for a jury docket call.  The State explained that one of its witnesses was currently unavailable and, therefore, it was not ready for trial.  In response, the trial court stated that it was releasing Bee on personal bond because the State was not ready and because he had been in jail for violating the conditions of his bond.  Later, Bee personally asserted that he wanted the charges dropped because his counsel was ineffective and because Bee had asked for a jury trial nearly three years earlier.  The trial court explained to Bee that it was attempting to schedule a trial for

him but that it was going to reset the case that day and allow him to file any motions that needed to be filed.

During that hearing, Bee's attorney stated that she had filed that day a speedy-trial motion and that she was requesting a ruling on the motion. The motion asserted that Bee would be prejudiced if his trial was not held before January 2023 because the case was three years old and because he had been in jail for 388 days. At the hearing, Bee's attorney requested that the trial be held before the end of 2022, and the trial court set the trial for November 15, 2022. The State informed the trial court that one of its necessary witnesses was on military duty out of the country until early the next year. The trial court confirmed that it wanted to keep the set trial date but explained that it would consider whether the date needed to be changed later. The trial court instructed the State to file a response to the speedy-trial motion as soon as possible. The State filed a response on November 2, 2022. No additional hearing on the motion was held, and the trial court made no express ruling on the speedy-trial motion.

On February 13, 2023, the State filed a motion for continuance asserting that the necessary witness had returned to the United States but requesting that trial be set for March 2023 because the witness needed a medical procedure and would need time to recover. No hearing was held on the motion, and no express ruling on the motion was made.

The trial in this case started on February 28, 2023, and Bee did not make any other speedy-trial claim. After considering the evidence presented at trial, the jury found Bee guilty of the charged offense. Bee requested that the trial court assess his sentence, and the trial court sentenced Bee to two years' imprisonment.

Bee appeals the trial court's judgment of conviction.

**DISCUSSION**

In one issue on appeal, Bee contends that the trial court violated his right to a speedy trial by denying his speedy-trial motion and granting a continuance until February 2023. *See* U.S. Const. amend. VI. Accordingly, Bee urges that his conviction should be reversed and that the case should be remanded to the trial court for further proceedings to allow the trial court to dismiss the charges against him with prejudice.

**Preservation**

As an initial matter, we note that the State asserts in its appellee's brief that Bee's claim was not preserved for appeal. *See* Tex. R. App. P. 33.1 (setting out preservation requirements). When making this assertion, the State argues that the trial court did not expressly rule on the speedy-trial motion. Further, the State notes that the trial court initially granted the relief requested during the hearing by scheduling the trial for November 2022, which was before the January 1, 2023 deadline suggested in Bee's motion. Moreover, the State notes that even though the trial did not actually begin until February 2023, nothing in the record indicates that Bee objected to the further delay. For these reasons, the State urges that Bee failed to preserve his speedy-trial claim.

As suggested by the State, before a party may present "a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion" "with sufficient specificity to make the trial court aware of the complaint" and that the trial court either "(A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." *See id.* R. 33.1(a). The State correctly points out that the Court of

Criminal Appeals has determined that a defendant may not present a speedy-trial claim for the first time on appeal when he made no objection on speedy-trial grounds and filed no speedy-trial motion. *See Henson v. State*, 407 S.W.3d 764, 766, 768 (Tex. Crim. App. 2013); *see also Crocker v. State*, 441 S.W.3d 306, 312 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (determining that speedy-trial claim was not preserved where no speedy-trial motion was presented to trial court); *Guevara v. State*, 985 S.W.2d 590, 592, 593 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (same).

In reaching that conclusion, the Court noted that a defendant can often benefit from the deprivation of his speedy-trial rights and that allowing this type of claim to be presented for the first time on appeal would allow a defendant to obtain the benefit of the passage of time without invoking his speedy-trial rights but then allow him to argue on appeal that the case should have been dismissed due to the delay. *Henson*, 407 S.W.3d at 769. Further, requiring that the claim be preserved allows for a record to be sufficiently developed for the purpose of reviewing the claim on appeal, *id.*, but the Court has more recently explained that no specific hearing on a speedy-trial motion need be conducted, *Taylor v. State*, 667 S.W.3d 809, 810 (Tex. Crim. App. 2023). Instead, the Court explained that the relevant information needs to be included somewhere in the record and that deficiencies in the information would "not prevent an appellate court from weighing the factors; it merely affects how they will be weighed." *Id.*

The circumstances at issue in this case differ significantly from those of *Henson* and other cases in which appellate courts determined that the claim had not been preserved. Bee filed a speedy-trial motion before trial and presented the motion during a pretrial hearing and requested a ruling. *See* Tex. R. App. P. 33.1(a). The trial court informed the parties that it would rule soon and informed the State to quickly file a response to the motion. The State filed a response

5

asserting that there was no speedy-trial violation and later filed a motion for continuance, and the trial court moved the trial start date beyond the date requested by Bee in his motion and in the pretrial hearing.

Although the trial court did not make an express ruling, the Rules of Appellate Procedure specify that an issue can be preserved for appellate consideration if a ruling is obtained "implicitly." *Id.* "Appellate courts will generally find that a trial court made an implicit ruling on an objection when the objection was brought to the trial court's attention and the trial court's subsequent action clearly addressed the complaint." *State v. Kelley*, 20 S.W.3d 147, 153 n.3 (Tex. App.—Texarkana 2000, no pet.).

Under these circumstances, we believe that the trial court's actions constituted an implicit denial of Bee's speedy-trial motion and that his speedy-trial claim has been preserved. *See Docket v. State*, 281 S.W.3d 152, 156 n.8 (Tex. App.—Texarkana 2009, no pet.) (concluding that defendant preserved speedy-trial claim by requesting ruling on motion to dismiss and where trial court denied motion but reserved right to revisit that ruling); *Kelley*, 20 S.W.3d at 153 (noting that trial court can implicitly deny speedy-trial motion after motion was "specifically brought to the trial court's attention"); *see also Grant v. State*, No. 04-23-00786-CR, 2024 WL 4218584, at *3 (Tex. App.—San Antonio Sept. 18, 2024, no pet.) (mem. op., not designated for publication) (assuming that trial court "implicitly denied appellant's [speedy-trial] motion by continuing the trial setting"). Accordingly, we now turn to the merits of the claim.

**Right to a Speedy Trial**

"The constitutional right to speedy trial protects defendants from oppressive pretrial incarceration, mitigates the defendant's anxiety and concern from public accusations, and ensures

6

that the defendant can mount a defense." *State v. Davis*, 549 S.W.3d 688, 697 (Tex. App.—Austin 2017, no pet.); *see also Leachman v. Stephens*, 581 F. App'x 390, 402 (5th Cir. 2014) (explaining that right to speedy trial applies to states through Fourteenth Amendment). However, unlike other constitutional rights, the deprivation of the right can benefit a defendant by "making it more difficult for the prosecution to meet its burden of proof." *Henson*, 407 S.W.3d at 766-67. Moreover, the right to a speedy trial is "a more vague concept than other procedural rights," and the violation of the right leads to a "more serious" remedy than the remedy for other violations because it results in the "dismissal of the indictment." *Barker v. Wingo*, 407 U.S. 514, 521, 522 (1972). "There is no fixed amount of delay that is too much." *Henson*, 407 S.W.3d at 767. "The right to a speedy trial attaches when a person becomes an accused," which "can be when he is arrested or when he is charged." *Id.*

Speedy-trial claims are analyzed by "applying the fact-specific balancing test set forth in *Barker*, under which the conduct of the prosecution and the defendant are weighed based on four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) any prejudice inflicted by the delay." *Davis*, 549 S.W.3d at 697. "Texas courts apply the same *Barker* test for speedy-trial analysis under state law as under federal law." *Id.*; *see Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992). Appellate courts balance these factors "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Balderas v. State*, 517 S.W.3d 756, 773 (Tex. Crim. App. 2016) (quoting *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008)). "If the delay is unreasonable enough to be presumptively prejudicial, the first *Barker* factor is satisfied and consideration of the remaining three factors is triggered." *Davis*, 549 S.W.3d at 697. Although the amount of delay that will provoke a speedy-

trial inquiry is "necessarily dependent upon the peculiar circumstances of the case," *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002) (quoting *Barker*, 407 U.S. at 530-31), in general, delays "approaching one year" are sufficient to warrant a speedy-trial inquiry, *Balderas*, 517 S.W.3d at 768.

"Under the *Barker* test, the State bears the burden of justifying the length of the delay, while appellant must meet his burden of proving his assertion of the right to speedy trial and showing prejudice." *Davis*, 549 S.W.3d at 697. "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Cantu*, 253 S.W.3d at 280 (quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280-81. "[T]he four factors are related and must be considered together along with any other relevant circumstances." *Id.* at 281. "As no factor possesses 'talismanic qualities,' courts must engage 'in a difficult and sensitive balancing process' in each individual case." *Id.* (quoting *Zamorano*, 84 S.W.3d at 648). "Because dismissal of the charges is a radical remedy, a wooden application of the *Barker* factors would infringe upon 'the societal interest in trying people accused of crime, rather than granting them immunization because of legal error.'" *Id.* (internal footnote omitted) (quoting *United States v. Ewell*, 383 U.S. 116, 121 (1966)). "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.*

"An appellate court reviewing a trial court's ruling on a motion to dismiss for want of a speedy trial must do so in light of the arguments, information, and evidence that was available to the trial court at the time it ruled." *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). Appellate courts "review factual components of the court's ruling on a speedy-trial claim for an

8

abuse of discretion and review legal determinations de novo, but the balancing test as a whole presents a purely legal question." *Davis*, 549 S.W.3d at 697-98. Accordingly, "appellate courts defer not only to a trial judge's resolution of disputed facts, but also to his right to draw reasonable inferences from those facts." *Cantu*, 253 S.W.3d at 282. "And all of the evidence must be viewed in the light most favorable to his ultimate ruling." *Id.*

*Length of Delay*

On appeal, Bee asserts that the amount of the delay between his conviction and his arrest or indictment weights against the State because the trial began approximately three and a half years after his arrest and four months after he invoked his speedy-trial rights. In addressing this factor, we must determine the length of the delay and decide whether the length of the delay was presumptively prejudicial in order to determine whether it is necessary to consider the remaining *Barker* factors. *See State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

As set out above, Bee was arrested in October 2019, and the indictment in the clerk's record shows that he was charged with DWI in December 2019. The trial in this case did not begin until February 28, 2023. Regardless of whether the time is measured from when Bee was arrested or formally charged, years passed between when the right to a speedy trial attached and when the trial commenced. Accordingly, we conclude that the delay in this case is presumptively prejudicial and consider the remaining *Barker* factors. *See Balderas*, 517 S.W.3d at 768.

*Reason for the Delay*

In his brief, Bee argues that he invoked his right to a speedy trial in October 2022 and asserts that there is no explanation for the delay leading up to his invocation of the right, which

he asserts should weigh against the State. Although Bee acknowledges that the State informed the trial court in October 2022 that it needed additional time because its key witness was not available, Bee asserts that the State did not issue a subpoena for the witness until October 2022. Bee asserts that the State's failure to previously subpoena the witness "inexplicably delayed" the trial for "an additional two months." Accordingly, Bee urges that this factor weighs against the State.

When appellate courts consider the reason for the delay, they "assign different weights to different reasons" because "[s]ome reasons are valid and serve to justify an appropriate delay." *Id.* "Deliberate delay intended to 'hamper the defense' weighs heavily against the State, while more neutral reasons, such as negligence or overcrowded courts, weigh less heavily." *Id.* (quoting *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)). Appellate courts also consider whether the defendant or the State is more responsible for the delay. *Id.* "Delay caused by the defendant or his counsel weighs against the defendant," but "[d]elay caused by law enforcement or the prosecution weighs against the State." *Davis*, 549 S.W.3d at 699.

During the October 2022 pretrial hearing, Bee personally asserted that he had asked for a jury trial three years earlier and that the State was not ready for trial, but the record does not indicate that the request was made or the nature of that request. In its response to Bee's speedy-trial motion, the State asserted that much of the delay following Bee's arrest and indictment at the end of 2019 was due to the unforeseeable initial impact of the COVID-19 pandemic. *See Laird v. State*, 691 S.W.3d 30, 40 (Tex. App.—Austin 2023, pet. ref'd) (explaining that if delays related to pandemic and accompanying court closures could be held against State, "they do so but slightly"); *State v. Conatser*, 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.) ("Delay caused by the onset of a pandemic cannot be attributed as fault to the State"); *see also* Travis County Criminal

10

District Courts District Court Plan for Resuming In-Person Jury Trials & Dockets Effective January 31, 2022, available at https://www.traviscountytx.gov/images/courts/Docs/DC_Plan_for_Resuming_In-Person_Dockets_Trials-Eff_1-31-22.pdf (last checked Jan. 27, 2025).

Further, the State explained in its response that the delay was caused in part by Bee's repeatedly requesting the appointment of new counsel, and the clerk's record reflects that Bee asked to have his appointed counsel removed from the case in November and December 2020 and that the trial court appointed a new attorney in December 2020, February 2021, and December 2021. *See Davis*, 549 S.W.3d at 703 (explaining that delay from appointment of new counsel "was a justified delay").

Additionally, the State mentioned in its response that Bee had been released on bond but was subsequently arrested for bond violations, and the clerk's record shows that Bee was released on personal bond three months after being indicted and was arrested again in September 2020 for allegedly violating the conditions of his release. Moreover, the State asserted that Bee agreed to multiple trial resets, and the record shows that the trial setting was repeatedly reset from January 2022 to April 2022 and does not indicate that any objection to those resets was made. *See Celestine v. State*, 356 S.W.3d 502, 507 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (explaining that agreed resets are inconsistent with assertion of speedy-trial right and that delay from agreed resets should not be included in speedy-trial computations). The record shows that Bee was released on bond in early 2021 but failed to appear for a jury docket call resulting in a capias being issued in April 2022. *Cf. Prescott v. State*, 123 S.W.3d 506, 516 (Tex. App.—San Antonio 2003, no pet.) (noting that "failures to appear" partially explained delay). The record shows that although the capias issued in April 2022, Bee was not located and arrested until August 2022. *Cf. Maldonado v. State*, No. 13-12-00696-CR, 2014 WL 5092896, at *6 (Tex. App.—

11

Corpus Christi-Edinburg Oct. 9, 2014, pet. ref'd) (mem. op., not designated for publication) (noting that inability to locate defendant due to his fleeing helped explain delay).

In addition, the State related that Bee asked for a continuance in September 2022 and that the two sides participated in plea negotiations during the case. *Cf. Munoz*, 991 S.W.2d at 824 (noting that "delay caused by good faith plea negotiations is a valid reason for the delay and should not be weighed against the prosecution"). And nothing in the record indicates that the State deliberately delayed the trial for strategic gain. *See Conatser*, 645 S.W.3d at 930.

Finally, the State explained that it needed additional time after the speedy-trial motion was filed because its main witness was on military duty out of the country until early 2023 and that the State offered to expedite resolution of the case by allowing virtual testimony from that witness. *See Barker*, 407 U.S. at 531 ("a valid reason, such as a missing witness, should serve to justify appropriate delay").

Viewing the evidence in the light most favorable to the trial court's ruling, nothing establishes deliberate delay on the part of the State designed to thwart Bee's defense, and we conclude that the delay in resolving this case should not be attributed to the fault of the State.

*Assertion of the Right to a Speedy Trial*

On appeal, Bee contends that he asserted his right to a speedy trial in October 2022 through a speedy-trial motion and an oral motion at the pretrial hearing.[1] For that reason, Bee suggests that this factor weighs against the State.

---

[1] In his brief, Bee also notes that he filed two pro se documents starting in December 2020 expressing frustration with the slow pace of the case. However, both of those documents indicated that he was unhappy with his counsel at the time and did not mention his right to a speedy trial. In any event, as the documents establish, Bee was represented at the time he filed those documents. "[A] defendant has no right to hybrid representation," and "a trial court is free to disregard any

Although a "defendant has no duty to bring himself to trial," he "does have the responsibility to assert his right to a speedy trial." *Cantu*, 253 S.W.3d at 282. A "defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 283. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Id.* "Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.* "A defendant's failure to timely demand a speedy trial indicates strongly that he did not really want one." *Davis*, 549 S.W.3d at 704. The longer the delay "the more likely a defendant who wished a speedy trial would be to take some action to obtain it." *Balderas*, 517 S.W.3d at 771 (quoting *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)). Accordingly, "inaction weighs more heavily against a violation the longer the delay becomes." *Id.* (quoting *Dragoo*, 96 S.W.3d at 314). "A lengthy delay in asserting the right makes it difficult to prove denial of a speedy trial and tends to diminish the importance of the State's inability to excuse the delay." *Clarke v. State*, 928 S.W.2d 709, 714 (Tex. App.—Fort Worth 1996, pet. ref'd).

As discussed previously, Bee was arrested in October 2019 and indicted in December 2019. Further, although the trial was reset multiple times, nothing in the record indicates that Bee objected to the resets. Moreover, he did not file a speedy-trial motion or present the motion to the trial court until October 2022. *See Orosco v. State*, 827 S.W.2d 575, 577 (Tex. App.—Fort Worth 1992, pet. ref'd) (noting that defendant "did not request a prompt trial until over

---

*pro se* motions presented by a defendant who is represented by counsel." *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007).

two years after his indictment" when determining that defendant's right to speedy trial was not violated); *see also Balderas*, 517 S.W.3d at 771 (noting that lack of timely demand for speedy trial indicates that defendant did not really want one). Moreover, nothing in the record indicates that Bee pursued his motion for speedy trial after the hearing. No additional motion was filed, and no additional hearing addressing speedy-trial complaints was held. Further, nothing in the record indicates that Bee objected to the trial court's decision to schedule the trial for February 2023, which was after the date originally requested in Bee's only speedy-trial motion. *See Clarke*, 928 S.W.2d at 714, 715 (concluding that trial court could have determined that assertion of right to trial was weak where defendant "did not pursue his motion for a speedy trial" after filing it); *see also Davis*, 549 S.W.3d at 707 (determining that assertion of "right to speedy trial was ambiguous at best" where defendant "acquiesced to the delay caused by waiting for the DNA test results because he thought it was 'the best course of action'").

Given the above and after viewing the record in the light most favorable to the trial court's ruling, we conclude that the third *Barker* factor weighs in favor of the State.

*Prejudice*

On appeal, Bee asserts that he was prejudiced by the delay but does not identify how the delay prejudiced him. Similarly, during the pretrial hearing and in his speedy-trial motion, Bee did not identify any specific prejudice that he suffered and instead generally asserted that he would be prejudiced if the trial were not conducted soon because the case was "now three years old." However, Bee contends on appeal that it is not necessary to produce proof of actual prejudice in a case like this where the length of the delay is several years and urges that prejudice should be

presumed in this case. For that reason, Bee asserts that this factor weighs in favor of a speedy-trial violation.

In addressing the fourth *Barker* factor, appellate courts, when determining whether and how much a defendant has been prejudiced by a delay, should bear in mind that "pretrial delay is often both inevitable and wholly justifiable." *Cantu*, 253 S.W.3d at 285 (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992)). Appellate courts should "consider three interests of defendants that the Speedy Trial Clause was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Balderas*, 517 S.W.3d at 772. "The last interest is the most important because the fairness of the criminal-justice system is distorted when a defendant is unable to adequately prepare his defense." *Id.* "As to the 'oppressive pretrial incarceration' subfactor, the 'dispositive consideration' is the impairment of a defendant's liberty with its effects upon the defendant." *Munoz*, 991 S.W.2d at 828. "[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 286.

Although a "defendant has the burden to make some showing of prejudice," "a showing of actual prejudice is not required." *Balderas*, 517 S.W.3d at 772. That is so "because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify." *Shaw*, 117 S.W.3d at 890. "On the other hand, this presumption of prejudice to the defendant's ability to defend himself is 'extenuated . . . by the defendant's acquiescence' in the delay." *Id.* (quoting *Doggett*, 505 U.S. at 658). "The first three [*Barker*] factors should be used to determine whether the defendant bears the *burden* to put forth specific

15

evidence of prejudice (or whether it is presumed)." *United States v. Bergfeld*, 280 F.3d 486, 490 (5th Cir. 2002).

Although the record shows that Bee was arrested in October 2019, it also shows that Bee was released on personal bond in early 2020. Bee was again arrested in September 2020, but the arrest was for failing to comply with a condition of his release. In March 2021, Bee was again released on personal bond and remained out of custody until August 2022 when he was arrested for failing to appear for a jury docket call. Accordingly, the record shows that Bee was not in custody during most of the delay and that most of the period that he was in custody was for violations other than his DWI offense. Accordingly, the interest designed to prevent oppressive pretrial incarceration only minimally applies here. *See Dokter*, 281 S.W.3d at 160; *see also Balderas*, 517 S.W.3d at 773 (noting that claim of prejudice was "undercut by the fact that he was being held on other serious charges"). Similarly, because Bee made no showing regarding any anxiety that he experienced due to his being in custody, the second interest also does not bear in the analysis here. *See Dokter*, 281 S.W.3d at 160.

Regarding the third interest that the defense will possibly be impaired, we cannot agree with Bee that the circumstances of this case warrant a presumption that Bee was prejudiced by the delay. Although the length of the delay in this was more than three years, Bee did not assert his right to a speedy trial until approximately three years after he was arrested. Much of the delay was due to factors that either should not be held against the State or should only minimally weigh against the State, and nothing in the record indicates that Bee objected to the delay other than by filing one speedy-trial motion. Accordingly, the remaining *Barker* factors establish that any presumption of prejudice was extenuated in this case. *See Shaw*, 117 S.W.3d at 890. Further, Bee did not argue either in his speedy-trial motion or at the pretrial hearing that any lapses in memory

16

would prejudice him or that witnesses were no longer available due to the delay. *See Munoz*, 991 S.W.2d at 829 (explaining that bare assertion of dimming memory did not constitute showing of impairment of defense); *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973) (noting that to establish prejudice defendant must show that witnesses were no longer available, that their testimony would be material and relevant, and that he exercised due diligence in attempting to find and produce them). Bee asserted in his motion and at the pretrial hearing that he would be prejudiced if a trial were not held before January 2023; the trial started less than two months after that suggested deadline.

After viewing the record in the light most favorable to the trial court's ruling, we conclude that the fourth *Barker* factor also weighs in favor of the State.

In summary, the first factor warrants consideration of the remaining *Barker* factors and weighs in favor of a speedy-trial violation. However, the second, third, and fourth *Barker* factors do not weigh in favor of a violation. Accordingly, we conclude that the trial court did not abuse its discretion by denying Bee's speedy-trial motion and, therefore, overrule his issue on appeal. *See Laird*, 691 S.W.3d at 46.

## CONCLUSION

Having overruled Bee's issue on appeal, we affirm the trial court's judgment of conviction.

17

_____

Karin Crump, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed

Filed:   January 29, 2025

Do Not Publish