

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-08-00085-CR

_____

PATRICK WAYNE PUCKETT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 30763-B

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

## OPINION

Almost five years[1] after the bar room brawl that resulted in serious personal injury to Timothy Driscoll and aggravated assault charges against Patrick Wayne Puckett, Puckett was tried, convicted, and sentenced to five years' confinement. Because that delay denied Puckett his constitutional right to a speedy trial, we reverse the judgment and render a judgment of acquittal.[2]

On the evening of the brawl, Puckett was having a few drinks at a club, when he reputedly saw a friend—Justin Dokter, also before this Court on appeal from his own conviction—on the floor and being beaten by a group of individuals. Puckett waded into the melee swinging a pool cue. There is testimony that the cue hit Driscoll in the head, inflicting serious injury. There is also testimony that the fight began when Dokter threw the first punch at Driscoll. Apparently, there had been a disagreement about who would get a pool table for the next game.

Puckett testified that, when he first saw Dokter being attacked, Dokter was on the ground, being hit by more than one person with hands and fists, and that he believed that, to protect Dokter

---

[1]The brawl happened May 16, 2003. Trial occurred March 24–25, 2008.

[2]Also appealed to our Court was the case of Justin Allen Dokter, our case number 06-08-00071-CR, which arose from the same brawl and was tried after a long delay very similar to the delay in this case. We note significant contrasts in the two cases. Puckett presented evidence of three witnesses who could not be located and introduced evidence of how those witnesses would have been expected to testify; Dokter proved the absence of only one witness and failed to prove the testimony expected from that witness. Moreover, Puckett proved the longstanding existence of a tentative plea agreement in his case on which he understandably relied in allowing a period of years to elapse while the cases languished on the docket. No such proof existed in Dokter's case.

2

from death or serious injury, and in light of the multiple attackers, the use of the pool cue or some other weapon would be immediately necessary.

Just over three years after those events, on June 26, 2006, the prosecuting attorney at the time reportedly agreed that Puckett's charge would be reduced to a misdemeanor, resulting in a county jail sentence. This apparent agreement was never finalized, despite repeated efforts by Puckett's counsel, and a later prosecutor felt no need to honor it. The new prosecutor, instead, prosecuted Puckett for the felony charge at bar. Trial was finally held in March 2008, two weeks after Dokter was tried.[3]

Puckett argues that the prosecution should have been dismissed because he was denied his right to a speedy trial. If a violation of the speedy-trial right is established, the only possible remedy is dismissal of the prosecution. *Strunk v. United States*, 412 U.S. 434, 440 (1973).

In determining whether an accused has been denied his or her right to a speedy trial, a court must use a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The factors to be weighed include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his or her speedy-trial right, and the prejudice to the defendant resulting from the delay. *Id*. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. *Id*. at 533; *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

---

[3]They were not tried together because Dokter had several prior felonies, while Puckett had no prior felonies.

3

The length of this delay—nearly five years—is clearly enough to require a *Barker* review, and is certainly excessive.[4] *See Barker*, 407 U.S. at 530–34. There was no one reason for the delay, and it is apparent that, while some minor portions of the delay resulted from continuance requests by defense counsel, other portions were due to the presumed agreement and still others due to the State's requests, which the State explains as occurring because the victim was incapacitated. The delay between 2003 and 2006 is basically unexplained. The speedy-trial right was not asserted until immediately before the trial began.

The primary focus of Puckett's argument is that the elapsed time allowed witnesses to become unavailable or, if available, to suffer from faded or changed memories. Thus, he argues, there was such prejudice to his ability to defend himself from the charge that his rights were violated.

When a reviewing court analyzes the fourth *Barker* factor (prejudice to the accused),

> it must do so in light of the defendant's interest that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired. Of these types of prejudice, the last is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire justice system."

*Cantu v. State*, 253 S.W.3d 273, 285 (Tex. Crim. App. 2008) (citing *Dragoo*, 96 S.W.3d at 316) (footnote omitted)).

---

[4]In general, delay approaching one year is sufficient to trigger a speedy trial inquiry. *Doggett v. United States*, 505 U.S. 647, 651–52 (1992); *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

4

The defendant has the burden to make some showing of prejudice, although showing actual prejudice is not required. *Munoz v. State*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999). When the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id*. (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)); *Blaylock v. State*, 259 S.W.3d 202, 210 (Tex. App.—Texarkana 2008, pet. ref'd).

The record of the hearing on the speedy-trial claim shows the following. The offense occurred in May 2003. At a pretrial hearing held in August 2003, the case was continued from September 12, 2003, to October 20, 2003, because the victim was in rehabilitation. Eleven months later, on August 20, 2004, the docket sheet indicates that Puckett did not appear for a docket call, but another entry the same day indicates that he was in custody when the case was called, and the penalties were set aside. On August 31, 2005, Puckett requested and was granted a continuance until after September 16, 2005. Defense counsel testified that, at a June 26, 2006, hearing, the assistant prosecutor stated that the case was to be reduced to a misdemeanor and that defense counsel got the court reporter who had attended that hearing to confirm the assistant prosecutor's statement from the notes taken at that hearing. Defense counsel also testified that, after that date, he spoke to the assistant district attorney several times, and left him notes, asking to get the matter resolved, to no avail. The State made no effort to rebut those factual claims by defense counsel, saying merely that a new prosecutor disagreed with the plea agreement previously made with Puckett.

5

Nothing further appears in the docket until January 25, 2008, when the case was continued at Puckett's request until March 10, 2008. Trial was finally held March 24–25, 2008.[5]

In order to show the harm caused by the delay, defense counsel was placed under oath and testified. Defense counsel testified that, because of the multi-year delay, he was unable to locate Rachel Malone, an employee at the bar, who had indicated in her statement to police that someone in the bar hit Driscoll with a beer bottle.[6] Counsel testified that he was unable to locate James Ford, who had indicated in his statement to police that he did not know who hit anyone with a pool cue. Counsel testified that he was unable to locate Alen Alexander, who informed police that he did not see Puckett hit anyone, but did see Driscoll hit his head quite hard on the pool table after Dokter struck Driscoll. Counsel also testified that Christina Adkins had evidently told the State that she might be available but had suffered a personal tragedy, and had said in her witness statement that she saw Dokter hit Driscoll repeatedly after Driscoll was on the ground.

When counsel was asked by the State whether those missing witnesses were the sole reason for his argument, he responded that the natural degradation of witnesses' memories over a five-year time period was also a major factor.

The trial court took over questioning of defense counsel from the prosecutor at that point, asking him if the matter had ever been put off because defense counsel had a vacation. Counsel

---

[5]Although the trial court noted that it saw the case on the docket in January 2007, that is not reflected by the trial court's docket contained in the record before us.

[6]See also testimony of police officer Brant Smith, acknowledging the same.

6

acknowledged that he took vacations. The court asked counsel if the trial had been put off because of injuries to defense counsel that had required him to take time off work. Counsel responded that he did not know whether trial was delayed then. Finally, the court also questioned counsel about whether those witnesses might have become unavailable shortly after the case was indicted. Counsel admitted that it was possible, but that he had no knowledge of that. From this record, neither did anyone else have such knowledge.

Defense counsel also pointed out that he had read the transcription of Dokter's trial two weeks earlier and that it was apparent that some of the witnesses had memory problems. The State's response was that memory loss starts the day after an event, and thus there was no real harm, as the witnesses were able to testify about the general course of the offense.

Ultimately, the trial court denied the motion, with its stated reason being that "only now on the eve of trial do we get a Motion to Dismiss for Lack of Speedy Trial. That just don't seem right to me. I deny the motion."

On appeal, the State focuses on the evident fact that the delay was partially caused by defense counsel. The information provided above, however, shows that by far the greatest portion of the delay was attributable to the State's inaction, rather than to actions by the defense. This factor weighs against the State.

The State also points out that Puckett did not file a speedy-trial request until very shortly before trial was actually held. This is correct, and would typically weigh heavily against the

7

defendant. The impact of that inaction, however, is substantially lessened because of the unique facts in this case. Puckett believed, reasonably, that an agreement with the State had been reached and that all that remained was to formalize that agreement for his guilty plea. In that situation, there would be no reason for Puckett to seek a speedy trial, or any trial at all, but just to try to conclude the plea agreement, which he did seek to do. Instead, the State allowed the case to sit idle for several years, and ultimately changed its mind about the agreement before it came to full fruition. The likelihood of the agreement being formalized extended until at least early 2007, when the assistant district attorney who had made the agreement was elected district attorney of an adjoining county. Thus, we cannot hold the delay in filing a motion for speedy trial against Puckett to any degree, as it did not become apparent until early 2008 that trial would happen at all.

The State directs us to language stating that, when a defendant fails to timely demand a speedy trial, there was no desire to have one and no harm in not having one. *See Shaw*, 117 S.W.3d at 890. Under these facts, the reason for not seeking a speedy trial earlier cannot reasonably be said to indicate strongly that Puckett wanted no trial, but rather that he was waiting for the State to fulfill its stated purpose to formalize an agreement. Under these facts, we will not hold this failure against Puckett.

It appears that Puckett was out on bond for a sizable portion of this time, so pretrial incarceration is not a significant consideration. There is little testimony about such matters as unusual anxiety or concern.

8

The main issue in this case is related to the factor that is recognized as being the most important, the presumption that the lengthy delay here did adversely affect Puckett's ability to defend himself. *See Dragoo*, 96 S.W.3d at 315. When the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Munoz*, 991 S.W.2d at 826 (quoting *McKenzie*, 491 S.W.2d at 123). A delay of more than two years is typically so excessive so as to be presumptively prejudicial. *Guajardo v. State*, 999 S.W.2d 566, 570 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Doggett*, 505 U.S. at 654–57). Yet, even the case where the delay is presumptively prejudicial, the defendant must nevertheless show that he or she has been prejudiced by the delay. *Id.*; *Palacios v. State*, 225 S.W.3d 162, 169 (Tex. App.—El Paso 2005, no pet.).

Thomas Johnson testified that Dokter hit Driscoll and that, immediately thereafter, Puckett hit Driscoll on the back of the head with a pool cue. On cross-examination, it was apparent that, in a number of other respects, his testimony and his contemporaneous statement were in conflict.

John Adami testified that Driscoll and Dokter were fighting—which he essentially ignored—and that Puckett came up from behind and hit Driscoll with a pool cue, that Driscoll fell down, and that Dokter got on top of him and kept on hitting him. On cross-examination, it became apparent that in his contemporaneous statement to police, Adami did not mention the use of a pool cue. Adami testified that he got involved with the fight, hit Puckett, knocked him down, and then

9

was grabbed by the bouncer. When asked if the fight involved Driscoll and Dokter both throwing punches, Adami did not recall, but characterized the incident as a fight between the two.

Sheri McCarty, Dokter's girlfriend, testified that Dokter and Driscoll exchanged words and then punches, and "a big old dog pile happened." She testified that, while Dokter and Driscoll were fighting, two other men attacked Dokter. When that happened, she told Puckett to get into the fight to help Dokter. She testified that she saw Puckett with a pool cue but never saw him make contact.

Charles Waldon, the bouncer at the bar, testified that he had seen Dokter and Driscoll arguing and that Waldon, himself, put down a dollar to pay for the pool game at issue. They kept arguing. Waldon told Dokter to leave. But, after Dokter briefly left, he returned and attacked Driscoll with his fist. At that "time I saw a pool stick come up, Patrick Puckman [sic] hit Timothy Driscoll." Waldon testified that he saw no one except Puckett jump in and hit anyone. However, as pointed out by defense counsel, in the immediate aftermath of the event, Waldon had told police that Dokter was the one who hit Driscoll with a pool cue.

Waldon's testimony is telling in one further respect. Defense counsel asked him to read his statement and pointed out that it did not match his testimony. The following exchange then occurred:

A. I'm trying to remember, it's been five years ago.

Q. And that's a fair statement, it has been – five years is a long time, isn't it.

A Yes, sir.

10

A security video was played for the jury. It was of bad enough quality that it was effectively worthless. Witnesses and counsel agreed that it did not reveal either anyone being struck by a pool cue or the fight between Driscoll and Dokter, only a number of people moving around pretty quickly.

It was the duty of the State to rebut the showing of prejudice made by Puckett. The State argues in its brief that it had rebutted any significant "memory loss of the witnesses, based on the fact that some of the same witnesses testified successfully in the companion case tried two weeks before the present case." That does not necessarily follow. In fact, this chain of events suggests the opposite result would be more likely. If witnesses have been recently prepared to testify about an event that occurred five years previously, then actually questioned and cross-examined about it, it is at least equally likely that their memories were supplemented by what they heard and said at Dokter's trial.

The State suggests no other viable reason to suggest that it had rebutted the showing of prejudice. Puckett showed that witnesses with relevant testimony were not available, and nothing but speculation was provided to suggest how the delay might not have harmed Puckett's ability to locate those witnesses. The State also suggested that the delay did not substantially affect the memories of those involved, but the trial record suggests the contrary.

As pointed out above, five years is a long time to keep details in memory, and it is a long time during which a memory might morph into something else. This problem was emphasized in

11

cross-examination when counsel pointed out material inconsistencies between the written statements of virtually every witness and their contemporaneous statements.

The record reveals that the excessive delay between the brawl and the trial may very well have figured into at least three discrepancies in key testimony. Johnson, who was one who testified at trial that Puckett hit Driscoll with the pool cue, had many conflicts between his trial testimony and his contemporaneous statement. Adami was another who testified at trial that Puckett hit Driscoll with the pool cue, but his contemporaneous statement did not mention that key fact. Waldon, the bouncer at the bar, was still another who said Puckett hit Driscoll with the pool cue; but Waldon's contemporaneous statement claimed that *Dokter* was the one who hit *Driscoll* with the pool cue.

We also recall that these witnesses were unavailable due to the delay: Malone, a bar employee who had told police that someone had hit Driscoll with a beer bottle; Ford, who had told police that he did not know who hit anyone with a pool cue; Alexander, who had told police that he did not see Puckett hit anyone, but that he did see Driscoll hit his head hard on the pool table after Dokter hit him; and Adkins, who had told police that she saw Dokter hit Driscoll repeatedly after he was on the ground.

We now must balance those factors. Weighing in favor of finding a violation of Puckett's right to a speedy trial are the excessive delay, for the vast majority of which the State offered no valid reason. Combined with this is the confusion engendered by the State's ultimate change of position—after four years had elapsed—not to abide by an agreement announced two years earlier.

12

The State created the delay, acquiesced in it, and now seeks to use the results of that delay for its own advantage.

Finally, unlike many of the cases cited by the State, in this case, Puckett provided testimony about the loss of witnesses who could apparently, from their contemporaneous reports to the police, have provided testimony substantially at odds with the State's theory of the assault.

Under these facts, we conclude Puckett has shown prejudice associated with the delay. Although a showing of "actual prejudice" is not required in Texas, the burden is on the accused to make some showing of prejudice which was caused by the delay of his or her trial. *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973) (citing *Courtney v. State*, 472 S.W.2d 151 (Tex. Crim. App. 1971)). This factor weighs heavily in favor of finding a violation of Puckett's speedy-trial right.

After considering all factors involved, we conclude Puckett was denied his constitutional right to a speedy trial.[7]

---

[7]Puckett also contends the trial court erred by refusing to submit a requested defensive instruction to the jury. Because the other issue disposes of this case, we need not address this issue.

13

We reverse the judgment of the trial court and render a judgment of acquittal.

Josh R. Morriss, III
Chief Justice

Date Submitted:     January 26, 2009
Date Decided:       February 13, 2009

Publish