

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00407-CR

MARK HONISH                                                                 APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Mark Honish of murder, and the trial court sentenced him to fifty years' imprisonment. *See* Tex. Penal Code Ann. § 19.02(b) (West 2011). In six issues, Appellant argues that the trial court erred by admitting illegally-obtained evidence and by excluding defense evidence, that the evidence is insufficient to support his conviction, that he was denied a speedy

---

[1]*See* Tex. R. App. P. 47.4.

trial, and that the State made an incurable improper jury argument.  We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and his brother David had been in the process of opening a large indoor gun range.  Appellant is a convicted felon.  The brothers began feuding about the business, and David threatened to expose Appellant for unlawfully possessing a firearm as a convicted felon.

David was found dead in his truck on the side of a road at 11:30 p.m. on June 21, 2007.  He had been shot twice in the left side of his head.  Texas Ranger Tracy Murphree investigated the scene; he noticed blood spatter inside David's truck and on the outside driver's side.  No gun was found at the scene. David's truck was running, the window was down, and he was buckled into his seatbelt.  It had been raining that day, and there were fresh tire tracks in the mud alongside the driver's side of David's truck.  Ranger Murphree concluded that the shooter was in another vehicle, probably a large SUV or truck based on the size of the tire tracks, and had pulled up alongside the driver's side of David's truck and shot him.  Police found a folder with a copy of an email from David to Appellant inside David's truck.  In the email, dated June 6, 2007, fifteen days prior to the shooting, David said Appellant was late paying "the next $1K installment" and threatened to expose Appellant as a convicted felon.[2]

---

[2]The email stated, in part,

Ranger Murphree contacted David's ex-wife from the scene, and she confirmed the feud between Appellant and David. Appellant lived ten to twelve miles from the scene, and the tracks in the mud near David's car headed in the direction of Appellant's home. Flower Mound Police Sergeant Colin Sullivan went back to the police department to prepare an affidavit for a search warrant to search Appellant's house and vehicle. Ranger Murphree and Denton County Sheriff's Department Investigator Larry Kish drove to Appellant's house at around 4:30 a.m. and saw a Ford truck in Appellant's driveway. The truck was registered to Appellant. From the street, Ranger Murphree could see mud on the side of the truck. He and Investigator Kish walked into the driveway to get a better look at the truck; they shone a flashlight on the truck and could see fresh

We are four days into a new month, and you are late with the next $1K installment.

You seem confused over the ground rules, as evidenced by your last visit? Let me explain reality to you.

I have you under my heel for the rest of this lifetime, and can crush you at will because of your own stupidity and your ongoing felony possession of firearms. Nothing you can do will change that. You should start to behave accordingly and belatedly learn some manners at least, if not develop any integrity.

. . . .

UNBLOCK YOUR EMAIL ASSHOLE. BAD NEWS WILL NOT DISAPPEAR BECAUSE YOU DON'T WANT TO SEE IT. IT WILL JUST COME TO YOU THRU ANOTHER SOURCE, MAYBE EVEN THIRD PARTIES THAT YOU'D JUST AS SOON NOT BE INFORMED OF YOUR LIES, TREACHERY, AND ONGOING FELONY ACTIVITY.

mud on the passenger side of the truck and that the tire tread pattern and width matched that of the tire tracks at the scene. The officers returned to their squad car and continued conducting surveillance; Ranger Murphree relayed to Sergeant Sullivan what they had seen on Appellant's truck.

At around 6:00 a.m., the officers saw Appellant get in his truck. Ranger Murphree stopped Appellant a few houses down from his house, and when Appellant opened the door to get out, Ranger Murphree saw a wipe mark in an S-pattern on the driver's side door; the truck was covered in road dust except the wipe-marked area. Ranger Murphree also saw a line of mud on the right passenger tire, indicating that it had been in "deep mud," and saw wet mud "sitting pretty loosely" on the running board, indicating that the truck had recently been in mud. Ranger Murphree told Appellant that his brother had been shot and asked if Appellant would move his truck back to his driveway because they were in the middle of the street. Appellant complied. Once in front of the driveway, Ranger Murphree told Appellant that he understood the brothers had been feuding. In response, Appellant said that he and David were trying to open a gun range and that David was trying to blackmail Appellant because he was a convicted felon; he then commented, "I guess you probably know that because of the paperwork in his vehicle."

Appellant, who was a pilot for Dean Foods, asked the officers if he should cancel a flight he was scheduled to make that day. Ranger Murphree said that would be a good idea. Appellant then began making numerous phone calls for

4

about thirty minutes. As the sun began to rise, Ranger Murphree noticed six drops of blood on the running board and fender well of Appellant's truck, just below the wipe mark that he had noticed earlier. Ranger Murphree relayed what he found on Appellant's truck to Sergeant Sullivan for inclusion in the search warrant affidavit. Police arrived with a cast of the tire tracks from the murder scene; they compared the cast to the tires on Appellant's truck and determined that the two matched. At one point, Appellant licked his thumb and rubbed something on the truck near the driver's door handle. Ranger Murphree instructed him not to touch the truck.

While they were waiting on the search warrant, a sprinkling rain began so Investigator Kish collected samples of blood and dirt from Appellant's truck in order to preserve evidence. Police then covered the door with plastic and a tarp and called for a wrecker. A search warrant issued shortly thereafter, around 8:15 a.m., and officers took guns and clothing from Appellant's house.

At trial, evidence showed that Appellant was on a flight the day of David's murder and arrived back in Dallas at 9:18 that night. Evidence also showed that the alarm at Advanced Gunworks, for which Appellant had security codes to enter, had been disabled at 10:37 that night and that a Bushmaster AR-15 was missing from the business. The drive from the airport to Advanced Gunworks takes about thirty minutes and from the gun business to the murder scene takes about eight minutes. Evidence at trial also showed that Appellant was giving David money and that he would meet David somewhere between Denton—

5

where David lived—and Trophy Club—where Appellant lived—to give David money.

Police found the AR-15 that had been taken from Advanced Gunworks in Appellant's house. Police also found a .357 magnum handgun containing six rounds of .38 special ammunition in Appellant's house. A .38-caliber handgun was found in a creek between the crime scene and Appellant's home; the gun belonged to Appellant's wife. The gun contained four live rounds and two spent rounds of .38 Special P Plus ammunition. A senior firearm and tool mark examiner testified to her opinion that the two bullets recovered from David's body were fired from the .38-caliber handgun found in the creek.

DNA swabs taken from Appellant's truck tested positive for blood and matched David's DNA.[3] Soil samples taken from Appellant's truck matched the soil at the crime scene but did not match the soil around Appellant's house.

### III. COMPLAINTS OF ILLEGALLY-OBTAINED EVIDENCE

In his first issue, Appellant argues that the trial court erred by denying his motion to suppress evidence obtained pursuant to a warrantless search in violation of the Fourth Amendment. Specifically, Appellant complains of police going onto his property to look at his truck and, after stopping him in the street but prior to obtaining the search warrant, taking swabs of the mud and blood on

---

[3]Evidence showed that one in over 39 quadrillion Caucasians, one in 1.1 quintillion African Americans, and one in over 409 quadrillion Southwest Hispanics had the same DNA profile as that in the blood found on Appellant's truck.

6

his truck without probable cause and without justification. He also argues that the search warrant's supporting affidavit was insufficient to provide probable cause and contained illegally-obtained evidence—specifically, statements he made to police and the mud and blood on his truck. In his second issue, Appellant contends that statements he made to the officers after he was stopped were taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.

7

*Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

Ordinarily, we consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996). But

8

this general rule is inapplicable when, as here, the parties consensually relitigated the suppression issues during trial on the merits. *Gutierrez*, 221 S.W.3d at 687; *Rachal*, 917 S.W.2d at 809 (considering trial evidence in suppression review when State reintroduced suppression issues without objection and when defense counsel fully participated in relitigation of issues in cross-examination).

## B. Initial Entry Onto Driveway

Appellant first challenges Ranger Murphree's and Investigator Kish's initial entry onto his driveway without a warrant to look at his truck. It is well settled that the Fourth Amendment provides significant protection to homes and the areas immediately attached to and surrounding them. *Rodriguez v. State*, 106 S.W.3d 224, 228 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *United States v. Tarazon-Silva*, 960 F. Supp. 1152, 1162 (W.D.Tex. 1997), *aff'd*, 166 F.3d 341 (5th Cir. 1998)), *cert. denied*, 540 U.S. 1189 (2004). Those areas immediately attached to and surrounding a home are referred to as the "curtilage," and whether a particular area is included within the curtilage of a home is determined by whether the defendant had a reasonable expectation of privacy in the area. *Matthews v. State*, 165 S.W.3d 104, 113 (Tex. App.—Fort Worth 2005, no pet.) (citing *Bower v. State*, 769 S.W.2d 887, 897 (Tex. Crim. App.), *cert. denied*, 492 U.S. 927 (1989), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991)).

Here, however, we need not determine whether the officers violated Appellant's Fourth Amendment rights because the information obtained by the officers after walking onto Appellant's driveway—that his truck had mud on it consistent with the murder scene and that his truck tires matched the tire tracks found at the murder scene—was also obtained when the officers stopped Appellant as he left his house that morning. In other words, the officers saw the mud and tire tread pattern and width when they walked onto his driveway, but they also saw the mud and tire tread pattern and width—in fact, in greater detail—after they stopped him and he parked in front of his driveway. Appellant does not challenge the legality of the officers' stop on appeal. Accordingly, even assuming the officers' initial warrantless entry onto Appellant's property to look at his truck violated his reasonable expectation of privacy, any error in admitting evidence attained by the officers during this entry cannot constitute reversible error because that same evidence was attained by officers after they stopped Appellant and the admission of this evidence attained during the stop is not challenged on appeal.[4] *See Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) ("'It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged.'") (quoting *Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. [Panel Op.] 1978)); *Cration v. State*, No. 14-02-00393-CR, 2003 WL

_____

[4]To the extent that Appellant challenges the officers' collecting blood and mud from his truck after the stop, we address that complaint below.

22908133, at *2 (Tex. App.—Houston [14th Dist.] Dec. 11, 2003, no pet.) (mem. op., not designated for publication) (applying *Leday* reasoning to render harmless alleged error in admitting evidence when same evidence was admitted, over appellant's objection, elsewhere and when appellant did not challenge latter admission on appeal); *Heidelberg v. State*, 112 S.W.3d 658, 664 (Tex. App.—Houston [1st Dist.] 2003), *aff'd*, 144 S.W.3d 535 (Tex. Crim. App. 2004).

### C. Evidence Obtained Prior to Issuance of Search Warrant

Appellant next complains of the police collecting swabs of blood and mud samples from his truck prior to the issuance of the search warrant. A warrantless search is justified when the State shows (1) that probable cause existed at the time the search was made and (2) that exigent circumstances existed that made the procuring of a warrant impracticable. *Turrubiate v. State*, No. PD-0388-12, 2013 WL 1438172, at *2 (Tex. Crim. App. Apr. 10, 2013); *Estrada v. State*, 154 S.W.3d 604, 610 (Tex. Crim. App. 2005); *McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991), *abrogated in part on other grounds by Turrubiate*, 2013 WL 1428172, at *4; *Pair v. State*, 184 S.W.3d 329, 334 (Tex. App.—Fort Worth 2006, no pet.). Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found. *Turrubiate*, 2013 WL 1438172, at *2; *McNairy*, 835 S.W.2d at 106. Exigent circumstances exist allowing a warrantless search when officers have a reasonable belief that evidence or contraband will

11

be destroyed before they can obtain a search warrant. *McNairy*, 835 S.W.2d at 106; *see Turrubiate*, 2013 WL 1438172, at *4 (limiting consideration of *McNairy* factors in determining "ultimate question" of whether officers could have reasonably believed that removal or destruction of evidence was imminent) (citing *Kentucky v. King*, 131 S. Ct. 1849, 1862 (2011)).

Applying these principles to this case, the evidence at the suppression hearing showed that David was found dead in his truck ten to twelve miles from Appellant's house; muddy tire tracks next to David's truck went in the direction of Appellant's house; an email found in David's truck showed that he was blackmailing Appellant; a phone call to David's ex-wife confirmed that the brothers were feuding; police saw mud on one side of Appellant's truck consistent with the tire tracks at the murder scene, saw drops of blood on the other side of his truck, and saw a wipe mark in an S-pattern on the driver's door above the blood spatter; and the tire tread and width of Appellant's truck tires matched that of the tracks found at the murder scene. Viewing the evidence in the light most favorable to the trial court's ruling and considering the facts and circumstances available to the officers prior to the search, as well as the reasonable inferences from that information, we hold that probable cause existed that evidence of David's murder could be found on Appellant's truck. *See McNairy*, 835 S.W.2d at 106.

Moving on to determine whether exigent circumstances existed to justify the warrantless search, Ranger Murphree testified that as they were waiting for

12

the search warrant to arrive, a sprinkling rain began. He also said that the area had received "a pretty good downpour" the previous morning and that, "in an effort to preserve evidence," Investigator Kish took swabs of blood off the running board on Appellant's truck and mud samples from the passenger side. Ranger Murphree testified to his opinion that, based on the weather, it was immediately necessary to do so: "If you get a big downpour where we're at out in the open, we're going to . . . quite possibly lose . . . the blood and . . . the mud." The officers did not search the interior of the truck or otherwise continue their search after collecting the swabs of mud and blood from the exterior of the truck; instead, they covered the truck door with plastic and waited until they received the search warrant. The officers could have reasonably believed that the evidence on the exterior of the truck would be destroyed before they obtained the search warrant so that exigent circumstances allowed the warrantless search of Appellant's truck. *See Turrubiate*, 2013 WL 1438172, at *2; *McNairy*, 835 S.W.2d at 107. Accordingly, the trial court did not err by denying Appellant's motion to suppress evidence of the mud and blood collected from Appellant's truck prior to issuance of the warrant.

## D. Statements During Custodial Detention

Appellant next complains that the statements he made to the officers during the investigative detention were the result of a custodial interrogation conducted without *Miranda* warnings. He does not point out the specific statements that should have been suppressed, and the record reveals only the

13

following statements made by Appellant after he was stopped: in response to Ranger Murphree saying that he understood that Appellant and his brother had been feuding, Appellant said that they had a falling out over a shooting range business that they were attempting to start, and Appellant said his brother had been threatening to reveal to business partners and to the authorities that Appellant was a convicted felon and then said, "I guess you probably know that because of the paperwork in his vehicle."

The State may not use a defendant's statements, whether exculpatory or inculpatory, stemming from a custodial interrogation unless the State demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda*, 384 U.S. at 436, 86 S. Ct. at 1602. Additionally, article 38.22 of the code of criminal procedure precludes the use of statements that result from a custodial interrogation without compliance with certain procedural safeguards. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005). When a statement taken in violation of the Fifth Amendment is improperly admitted as evidence at trial, we apply rule 44.2(a) to determine whether the error calls for reversal of the judgment. *See* Tex. R. App. P. 44.2(a). Under rule 44.2(a), we must reverse the conviction unless we determine beyond a reasonable doubt that the error did not contribute to the appellant's conviction or punishment. *Id.* In applying the "harmless error" test, our primary question is whether there is a "reasonable possibility" that the error might have contributed to

14

the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). We "should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment,'" and if applicable, we may consider the nature of the error, the extent that it was emphasized by the State, its probable collateral implications, and the weight a juror would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)). This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution." *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989), *disagreed with in part on other grounds by Snowden*, 353 S.W.3d at 821–22.

Here, assuming the trial court should have excluded Appellant's statements as taken in violation of *Miranda*, other evidence admitted at trial—including the printout of the email found in David's truck—showed that Appellant was feuding with his brother and that David had threatened to reveal that Appellant was a convicted felon in possession of firearms. Additionally, we

15

recount below in our sufficiency review the overwhelming evidence of Appellant's guilt. Although Appellant's indicating to police that he knew about the printed-out email in his brother's truck adds a detail not admitted elsewhere, we cannot say that, in light of the other evidence of Appellant's guilt, a juror would place much, if any, weight on the statement. *See Snowden*, 353 S.W.3d at 822; *see also Jones v. State*, 119 S.W.3d 766, 778–80 (Tex. Crim. App. 2003) (assessing independent proof of appellant's participation in extraneous murders exclusive of statement taken in violation of *Miranda*), *cert. denied*, 542 U.S. 905 (2004). The State mentioned the complained-of statements briefly in its opening statement and did not mention them in its closing argument. After carefully reviewing the record and performing the required harm analysis under rule 44.2(a), we hold beyond a reasonable doubt that any error in admitting Appellant's statements made to the officers after he was stopped did not contribute to his conviction or punishment.[5] *See* Tex. R. App. P. 44.2(a).

## E. Sufficiency of Supporting Affidavit

Appellant next complains of the probable cause affidavit. A search warrant cannot issue unless it is based on probable cause as determined from the four corners of an affidavit. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 18.01(b) (West Supp. 2012) ("A sworn affidavit . . .

---

[5]To the extent Appellant makes the conclusory assertion, without citation to applicable law or further explanation, that the trial court erred by "not permitting the 38.23 instruction to the jury," he has presented nothing for review. *See* Tex. R. App. P. 38.1(i); *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000).

establishing probable cause shall be filed in every instance in which a search warrant is requested."); *Nichols v. State*, 877 S.W.2d 494, 497 (Tex. App.—Fort Worth 1994, pet. ref'd).

Under the Fourth Amendment and the Texas constitution, an affidavit supporting a search warrant is sufficient if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed. *Swearingen v. State*, 143 S.W.3d 808, 810–11 (Tex. Crim. App. 2004); *Nichols*, 877 S.W.2d at 497. Article 18.01(c) of the code of criminal procedure requires an affidavit to set forth facts establishing that (1) a specific offense has been committed, (2) the item to be seized constitutes evidence of the offense or evidence that a particular person committed the offense, and (3) the item is located at or on the person, place, or thing to be searched. Tex. Code Crim. Proc. Ann. art. 18.01(c); *see Tolentino v. State*, 638 S.W.2d 499, 501 (Tex. Crim. App. [Panel Op.] 1982). Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate in an affidavit, there is at least a "'fair probability'" or "'substantial chance'" that evidence of a crime will be found at the specified location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 243 n.13, 103 S. Ct. 2317, 2332, 2335 n.13 (1983)). The magistrate's action "cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239, 103 S. Ct. at 2333.

When reviewing a magistrate's decision to issue a warrant, we apply a deferential standard in keeping with the constitutional preference for a warrant. *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011); *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007); *Emenhiser v. State*, 196 S.W.3d 915, 924–25 (Tex. App.—Fort Worth 2006, pet. ref'd). We should interpret the affidavit in a commonsense and realistic manner, recognizing that the magistrate may draw reasonable inferences. *See Rodriguez*, 232 S.W.3d at 61.

Here, the affiant informed the magistrate of the following:

- Officers found David dead, apparently of a gunshot wound, in his truck on the side of the road;

- Officers saw "a clear set of tire tracks traveling north bound alongside and in close proximity to the victim's driver side door," and Ranger Murphree noted the muddy shoulder of the road, the tire tracks, and the blood spatter on the vehicle;

- Officers found a printed email in David's truck that David sent Appellant, threatening Appellant: "You don't roar at me and wag your finger in my face, EVER AGAIN IN THIS LIFETIME ASSHOLE! I explained to you in FEB 2006 that I was finished taking shit from you. I meant it. There will be severe consequences for noncompliance . . . because of your own stupidity and your ongoing felony possession of firearms";

- David's ex-wife confirmed that he and Appellant had been feuding for some time;

- Ranger Murphree and Deputy Kish drove to Appellant's house and saw a white male pulling out of the driveway in a 2006 black Ford truck; and

18

- Ranger Murphree saw six drops of blood on the driver's side running board of Appellant's truck, saw mud on the tail pipe on the right side of the truck that matched the characteristics of the mud from the crime scene, and noticed that the tread pattern of Appellant's truck tires matched the tire marks left at the crime scene.[6]

We conclude that, based on the totality of the circumstances reflected in the affidavit, the magistrate had a substantial basis to conclude that there was a "fair probability" or "substantial chance" that evidence of a particular crime—murder—would likely be found in Appellant's house and truck. *See McLain*, 337 S.W.3d at 271; *Flores*, 319 S.W.3d at 702; *Swearingen*, 143 S.W.3d at 810–11; *Nichols*, 877 S.W.2d at 497. Accordingly, the trial court did not err by denying Appellant's motion to suppress evidence seized from his truck and home on the ground that the affidavit did not establish probable cause.

Having addressed all of Appellant's arguments in his first and second issues, we overrule them.

---

[6]The affidavit also included Appellant's statement after he was stopped, "[David] has been threatening me, but you probably know that by looking at the email in his truck," and noted that Ranger Murphree had never told Appellant that David was shot in his truck. Because we have assumed that this statement was taken in violation of *Miranda*, we do not consider this evidence in our evaluation of the sufficiency of the probable cause affidavit. *See Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996); *Castillo v. State*, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991) (putting aside all tainted allegations in a probable cause affidavit to determine whether the independently and lawfully acquired information stated in the affidavit clearly established probable cause), *overruled on other grounds by Torres v. State*, 182 S.W.3d 899 (Tex. Crim. App. 2005).

## IV. EXCLUSION OF DEFENSE EVIDENCE

In his third issue, Appellant argues that the trial court abused its discretion by excluding evidence relating to his defensive theory that another truck and another potential suspect was involved. When reviewing a trial court's decision to admit or exclude evidence, we apply an abuse-of-discretion standard. *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008). The trial court does not abuse its discretion unless its ruling lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). Whether evidence is relevant is a matter within the sound discretion of the trial court. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993), *cert. denied*, 510 U.S. 966 (1993); *see* Tex. R. Evid. 401. Even relevant evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403.

Appellant argues that he should have been allowed to present evidence— through his own testimony—that David was a drug dealer and drug abuser in order to advance Appellant's defensive theory that someone else shot David. Appellant made an offer of proof but did not tender any other evidence connecting David's alleged drug use or dealing to his murder; thus, the trial court acted within its discretion by excluding this evidence. *See* Tex. R. Evid. 401, 403; *Dickson v. State*, 246 S.W.3d 733, 739 (Tex. App.—Houston [14th Dist.]

20

2007, pet. ref'd) ("Texas jurisprudence is clear that evidence of third party guilt is inadmissible if it is mere speculation that another person may have committed the offense.").

Another defensive theory was that the distance between the tires on Appellant's 2006 Ford F-350 truck did not match the tire tracks left at the scene; defense counsel attempted to prove this by having Appellant measure, in court, the distance between the tires taken off his truck to "tell the true track of the F-350." Even assuming that the trial court should have admitted this in-court-measurement evidence, Appellant nonetheless did present evidence and cross-examine the State's witnesses regarding the distance between the tires on his truck in comparison to the distance between the tire tracks found at the murder scene. Specifically, Appellant called the officer who had measured both the tire tracks at the murder scene and the tire distance on Appellant's truck the day after the murder, and Appellant introduced into evidence a diagram showing the distance between the tires on Appellant's truck. Appellant did not assert in his offer of proof and has not asserted on appeal that Appellant's in-court measurements would have varied from the officer's measurements. We cannot say that, in the context of the entire case against Appellant, the trial court's prohibiting Appellant from making those same measurements at trial in front of the jury had a substantial or injurious effect on the jury's verdict. *See* Tex. R. App. P. 44.2(b); *King,* 953 S.W.2d at 271; *see also, e.g., Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (holding that to show harm, the

21

excluded evidence must be controlling on a material issue and not cumulative of other evidence). We overrule Appellant's third issue.

## V. SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Appellant argues that insufficient evidence exists to support his conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex.

22

Crim. App. 2011).  We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.  *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

A person commits murder when he (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.  Tex. Penal Code Ann. § 19.02(b)(1), (2).  A person acts intentionally when he has a conscious desire to cause the result of his conduct.  *Id.* § 6.03(a) (West 2012).  A person acts knowingly when he is aware that his conduct is reasonably certain to cause the result.  *Id.* § 6.03(b).  A person's knowledge and intent may be inferred from the "acts, words, and conduct of the accused."  *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *see Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

In this case, the State introduced evidence that David was found dead sitting in the driver's seat of his truck on the side of the road with two gunshots to the left side of his head.  Tire tracks alongside the driver's side of David's truck led toward Trophy Club, where Appellant lived; the pattern of the tire tread and the width of the tire tracks matched that of the tires on Appellant's truck.  Mud found on the passenger side of Appellant's truck was consistent with the mud and tire tracks at the scene; blood drops found on the driver's side running board of Appellant's truck matched David's DNA.

23

In addition to evidence connecting Appellant's truck to the murder, evidence also showed that the brothers had been feuding, that David had been blackmailing Appellant, and that the two would occasionally meet on the side of the road between Appellant's house in Trophy Club and David's house in Denton. The murder scene was between those two places. Evidence showed that Appellant had called David at 4:25 that afternoon and that Appellant had used a security code to enter a business approximately eight miles from the murder scene less than one hour before David's body was found in his truck on the side of the road. After Appellant was stopped by Ranger Murphree and Investigator Kish the following morning, he commented that he knew David's truck contained "paperwork"—a print out of an email David had sent Appellant—evidencing the feud between the brothers. During the stop, Appellant wiped a spot on his truck just above where David's blood was found. A .38-caliber handgun found in a creek between the murder scene and Appellant's house belonged to Appellant's wife; a business friend of Appellant's testified that he had once seen Appellant carry a .38-caliber handgun in his truck and that Appellant had said it belonged to his wife. The ammunition found in the gun was of the same type as that found in David's body, and evidence was presented that the bullets found in David's body had been fired from that gun.

Viewing the evidence in the light most favorable to the verdict, we hold that any rational trier of fact could have found the essential elements of murder

24

beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789 (1979); *Wise*, 364 S.W.3d at 903. We overrule Appellant's fourth issue.

## VI. SPEEDY TRIAL

In his fifth issue, Appellant argues that he was denied his right to a speedy trial. This right is constitutionally guaranteed. U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see Barker v. Wingo*, 407 U.S. 514, 515, 92 S. Ct. 2182, 2184 (1972); *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). In determining whether a defendant has been denied this right, a court must balance four factors: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192; *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

The *Barker* test is triggered by a delay that is unreasonable enough to be "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1 (1992); *Murphy v. State*, 280 S.W.3d 445, 451 (Tex. App.—Fort Worth 2009, pet. ref'd). Depending on the nature of the charges, a post-accusation delay of about one year is "presumptively prejudicial" for purposes of the length-of-delay factor. *Doggett*, 505 U.S. at 652 n.1, 112 S. Ct. at 2691 n.1; *Orand v. State*, 254 S.W.3d 560, 566 (Tex. App.—Fort Worth 2008, pet. ref'd). If the accused shows that the interval between accusation and trial

25

has crossed the threshold dividing "'ordinary'" from "'presumptively prejudicial'" delay, then the court must consider, as one factor among several, the extent to which that delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002) (quoting *Doggett*, 505 U.S. at 652, 112 S. Ct. at 2690–91).

Here, Appellant was arrested on June 22, 2007, and the trial began on August 22, 2011. The delay of over four years between his arrest and his trial weighs in his favor and triggers an analysis of the remaining *Barker* factors. *See, e.g.*, *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (holding delay of thirty-eight months weighed heavily in appellant's favor).

Appellant was indicted two months after his arrest. Although there were multiple trial settings where the case was passed to a later date, the record does not show that the State sought any continuances; however, Appellant requested and received two continuances of the trial. The second *Barker* factor—the reasons for the delay—weighs only slightly, if at all, in Appellant's favor. *See Murphy*, 280 S.W.3d at 453 (stating that "delay which is attributable in whole or in part to the defendant can weigh against the defendant and may even constitute a waiver of a speedy trial claim") (citing *Barker*, 407 U.S. at 529, 92 S. Ct. at 2191–92).

Appellant never asserted his right to a speedy trial at trial; he raised it for the first time on appeal. Although he did not forfeit this right by not raising it at trial, his failure to assert it makes it difficult for him to prove that he was denied a

26

speedy trial. *See Zamorano*, 84 S.W.3d at 651 ("[A] failure to assert the right makes it difficult for a defendant to prove that he was denied a speedy trial."). The third *Barker* factor—assertion of the right—weighs against Appellant.

Appellant asserts on appeal that there was "the possibility" of his defense being impaired as a result of the delay and asserts, generally, "dimming memories" and "loss of exculpatory evidence" as possible impairments. The possibility that the defense will be impaired is the most serious interest that the speedy trial right is intended to protect. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *see also Doggett*, 505 U.S. at 654, 112 S. Ct. at 2692; *Dragoo v. State*, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003). A showing of actual prejudice is not required; however, a defendant must make a prima facie showing of prejudice caused by the delay of the trial. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999). Appellant has not made a prima facie showing here, and the final *Barker* factor—prejudice caused by the delay—does not weigh in his favor. *See Murphy*, 280 S.W.3d at 455 (finding minimal prejudice when appellant testified that she had trouble remembering things but did not testify how this might impair her defense); *cf. Puckett v. State*, 279 S.W.3d 434, 441 (Tex. App.—Texarkana 2009, no pet.) (finding prejudice where appellant showed witnesses with relevant testimony were unavailable).

The *Barker* factors, balanced together, weigh against finding a speedy trial violation. *See* 407 U.S. at 534, 92 S. Ct. at 2194 (no speedy trial violation because defendant not seriously prejudiced by five-year delay between arrest

27

and trial and defendant wanted dismissal of charges, not speedy trial); *Dragoo*, 96 S.W.3d at 315 (no speedy trial violation because defendant demonstrated no serious prejudice by more than three-year delay between arrest and trial and waited until just before trial to assert right); *Phipps v. State*, 630 S.W.2d 942, 946 (Tex. Crim. App. 1982) (no speedy trial violation when defendant demonstrated no prejudice by four-year delay between arrest and trial and defendant waited until one month before trial to assert right). We overrule Appellant's fifth issue.

### VII. JURY ARGUMENT

In his sixth issue, Appellant argues that the State improperly commented on defense counsel's effective assistance during the State's closing argument at the guilt-innocence stage by referring to objections made by defense counsel during trial. Appellant does not point out the exact comment he is complaining of, but based on his arguments on appeal and a review of the record, we assume Appellant is complaining of the following statement by the State:

> [*THE STATE*]: . . . [T]he blood on the truck is his brother's. Remember all the objections, all the dialog about –
>
> [*DEFENSE COUNSEL*]: (Overlapping) Objection. Objection, Your Honor. It is improper for him to – to talk about the objections by either side.
>
> *THE COURT:* Sustained. Sustained.
>
> [*DEFENSE COUNSEL*]: Instruction to the jury . . . to disregard that and not draw any inference from the fact that he has maligned me for making objections.
>
> *THE COURT:* I'll say to the jury: You have been instructed, and it is in the charge, that you are not to infer anything by any

28

> rulings as to offered evidence. Whether it is admitted or not admitted, you are not to draw any inferences therefrom.

The trial court then denied Appellant's motion for a mistrial.

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

When a trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). Only in extreme circumstances, when the prejudice caused by the improper argument is incurable, i.e., "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Id.*; *see also Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004). In determining whether a trial court abused its discretion by denying a mistrial, we balance three factors: (1) the severity of the misconduct (prejudicial effect); (2) curative measures; and (3) the certainty of conviction absent the misconduct. *Hawkins*, 135 S.W.3d at 77; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

A mistrial may be required when a prosecutor attacks a defendant "over the shoulders of his counsel" by calling defense counsel's comments "lies" or referring to defense counsel's objections as "frivolous." *See Bell v. State*, 614 S.W.2d 122, 123 (Tex. Crim. App. [Panel Op.] 1981); *Anderson v. State*, 525 S.W.2d 20, 22 (Tex. Crim. App. 1975). But, here, the State's argument did not go that far; the State's referring the jury to "all the objections" and dialog about the blood spatter was not a direct allegation that counsel had acted *improperly* by objecting to that evidence. *Cf. Fuentes v. State*, 664 S.W.2d 333, 335 (Tex. Crim. App. [Panel Op.] 1984) (holding prosecutor's comments that defense counsel was acting in bad faith and arguing "a bunch of garbage" warranted reversal). The trial court immediately sustained defense counsel's objection and instructed the jury not to make any inferences from the court's rulings on evidence offered at trial, and the jury charge instructed the jury similarly.[7] We presume the jury followed these instructions absent evidence to the contrary.

---

[7]The jury charge instructed,

> At times throughout the trial the Court has been called upon to pass on the question of whether or not certain offered evidence might properly be admitted. You are not to draw any inferences from them. Whether offered evidence is admissible is purely a question of law. In admitting evidence to which an objection is made, the Court does not determine what weight should be given such evidence; nor does it pass on the credibility of the witness. As to any offer of evidence that has been rejected by the Court, you, of course, must not consider the same; as to any question to which an objection was sustained, you must not conjecture as to what the answer might have been or as to the reason for the objection.

30

*See Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). Furthermore, we have already detailed the sufficiency of the evidence to support Appellant's conviction. *See Hawkins*, 135 S.W.3d at 77 (balancing the certainty of conviction in harm analysis).

We hold that any harm caused by the complained-of argument was cured by the trial court's instruction to disregard and that, consequently, the trial court did not abuse its discretion by denying Appellant's motion for mistrial. *See id.* at 76–77. We overrule his sixth issue.

## VIII. CONCLUSION

Having overruled Appellant's six issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 25, 2013